# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITH ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 10-937 |
| | ) | Chief Judge Lancaster |
| v. | ) | Magistrate Judge Bissoon |
| | ) | |
| LOUIS FOLINO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that Defendant Gibbs's

motion to dismiss (Doc. 36) be granted in part and denied in part.  It is further recommended that

the partial motion to dismiss filed by Defendants Bogden, Bowman, Donna Doe, Roxanna Doe,

Duke, Folino, Grimm, Kerfelt, McAnany, Mega, Nelson, Rauenswinder, Rush, Santoya, Stump,

Tanner, Walter, and Wilson ("DOC Defendants") (Doc. 42) be granted in part and denied in part.

## II. REPORT

Keith Anderson ("Plaintiff") is a state inmate currently incarcerated at the State

Correctional Institution at Rockview ("SCI-Rockview"), in Bellefonte, Pennsylvania.  Plaintiff

brings this suit pursuant to the Civil Rights Act of 1871, 42 U.S.C § 1983, *et seq*., alleging that,

while he was incarcerated at the State Correctional Institution at Greene ("SCI-Greene"), his

rights under the Eighth Amendment to the Constitution of the United States were violated on

multiple occasions by a host of Defendants.  See generally Compl. (Doc. 3).  Plaintiff also seeks

redress under multiple provisions of the Pennsylvania Constitution, and brings various

Pennsylvania tort claims as well.  Plaintiff explicitly states that he is suing Defendants in their individual and official capacities.  Id. at 12.

This civil action commenced with the receipt of the complaint on July 15, 2010.  (Doc. 1-2).  Plaintiff was granted leave to proceed *in forma pauperis* ("IFP") on July 16, 2010.  (Doc. 2).  Defendant Gibbs filed a motion to dismiss on December 3, 2010.  (Doc. 36).  The DOC Defendants filed a partial motion to dismiss on December 22, 2010.  (Doc. 42).  Plaintiff responded to both motions on January 14, 2011 (Docs. 45 and 46).  These motions are ripe for disposition.

## A.  Plaintiff's Factual Allegations and Legal Claims

Plaintiff alleges that, on July 16, 2009, Defendant Shaffer improperly denied him outdoor recreation.  (Doc. 3) ¶¶ 21-23.  Plaintiff filed a grievance with respect to this incident – however, he alleges that Defendant Bogden intentionally destroyed the grievance form, or failed to process it, on July 17, 2009, as part of a conspiracy with Defendant Shaffer.[1]  Id. ¶¶ 28-31.  Plaintiff alleges that this violated his rights under the Fifth and Fourteenth Amendments to the Constitution of the United States, as well as Article I, §§ 20 and 26 of the Pennsylvania Constitution.  Id. ¶¶ 30-31.  Plaintiff further alleges that Defendant Shaffer's denial of that single period of outdoor recreation to Plaintiff constituted the tort of "malfeasance/nonfeasance[.]"  Id.

---

[1] DOC Defendants filed a partial answer with respect to Plaintiff's claims excessive force and retaliation claims against Defendant Shaffer on December 22, 2010.  (Doc. 41).  Accordingly, except for Plaintiff's claims with respect to the misconduct reports that he received on September 14, 2009, see Part II.B.1.h, infra, and Defendant Shaffer's liability under the laws of Pennsylvania, see Part II.B.2, infra, nothing in this report should be construed to address those claims.

¶ 31.  Plaintiff alleges that he submitted a second grievance – grievance number 281776 – concerning the above incident on July 22, 2009.  Id. ¶ 33.

Plaintiff next asserts that, on July 22, 2009, he was being escorted to his cell by Defendant Shaffer.  Plaintiff alleges that during this encounter, Defendant Shaffer grabbed Plaintiff's collar and pulled it "extremely tight to where said collar was choking [P]laintiff, at which time [P]laintiff felt very light headed and dizzy." Id. ¶ 33.  While removing Plaintiff's handcuffs at his cell, Defendant Shaffer allegedly "pull[ed] [P]laintiff's arms extremely tightly and forcefully, which caused [P]laintiff's hands to grind against the door wicket," allegedly bruising and abrading Plaintiff's hands.  Id. ¶ 35.  Defendant Shaffer also allegedly told Plaintiff "[k]eep filing you're [sic] fucking grievances and I'm gonna [sic] knock your black raghead teeth out by slamming your face off the fucking concrete floor." Id. ¶ 36.  Plaintiff asserts that Defendant Shaffer's alleged acts constituted violations of the Eighth Amendment's prohibition of cruel and unusual punishment, Article I, § 13 of the Pennsylvania Constitution, and various state tort laws.  Id. ¶¶ 35, 138.  Plaintiff also claims – somewhat obliquely, that these acts were in retaliation for the filing of his initial grievance against Defendant Shaffer.  Id. ¶ 38.  Plaintiff filed grievance number 282575 with respect to this alleged incident on July 28, 2009.  Id. ¶ 38.  Plaintiff alleges that Defendant Tanner, who allegedly was assigned the duty to investigate this grievance, failed to do so properly.  Id. ¶ 39.  Plaintiff further alleges that Defendant Shaffer's supervisors – including Defendant Folino – failed to take any corrective action in spite of the complaints contained in these grievances.  Id. ¶ 40.

On August 11, 2009, Defendant Shaffer allegedly interfered with Plaintiff's attempted filing of a third-level appeal from the denial of grievance number 281776.  Id. ¶¶ 43, 46.

Similarly, Defendant Nelson allegedly interfered with the filing of Plaintiff's final appeal from the denial of grievance number 282575 on August 18, 2009. Id. ¶¶ 47-48, 50.

Next, Plaintiff alleges that Defendant Shaffer denied him a telephone call on September 17, 2009. Id. 52. Also on that date, Defendant Shaffer allegedly told Plaintiff "'[y]ou'll get yours sooner or later[;]'" "'I'll get my shot soon[;]'" and that he "'didn't [sic] care who my [sic] rat ass told.'" Id. ¶¶ 53-54. Plaintiff filed grievance number 288587 with respect to this alleged incident on September 14, 2009.[2] Id. ¶ 56.

Also on September 14, 2009, Plaintiff allegedly was waiting to be taken out of his cell for a period of outdoor recreation at 7:00 A.M. Id. ¶ 57. He was "processed out" by Defendants Stump and Rush, and Defendant Bowman allegedly opened Plaintiff's cell door from a control panel. Id. ¶ 59. Defendant Stump escorted Plaintiff to Defendant Shaffer, who would escort Plaintiff to the yard. Id. ¶¶ 61-62. Plaintiff told Defendant Stump at this time that he wanted to return to his cell, and did not want to be transported by Defendant Shaffer. Id. ¶ 63. Defendant Stump allegedly responded "'[n]ot this time,' and [P]laintiff was forcefully tugged down the stairs by [D]efendant Shaffer." Id. ¶ 64. Plaintiff alleges that, as they were descending the staircase, Defendant Shaffer grabbed Plaintiff's jumpsuit with enough force to choke him. Id. ¶ 65. Defendant Rauenswinder met them at the bottom of the stairs, and assisted in escorting Plaintiff to the yard. Id. ¶ 67. As Plaintiff was led out the door by Defendant Shaffer, Defendant Rauenswinder allegedly stood in front of the window on the yard, thus obscuring its view Id. ¶ 67.

Once on the yard, Defendant Shaffer allegedly attacked Plaintiff, punching him in the head and face. Id. ¶ 68. Plaintiff attempted to "slide down [a] wall, but fell over due to being

_____

[2] This Court notes the discrepancy between these two dates.

4

handcuffed and losing his balance . . . split[ting] his head open of [sic] the brick wall, and further injuring his shoulder." Id. ¶ 72. Plaintiff also alleges that he injured his spine during the attack. Id. ¶ 73. As the alleged assault continued, Defendant Shaffer began to choke Plaintiff while he was on the ground, and continued striking him for about five minutes, when Defendant Rauenswinder allegedly called Defendant Shaffer's name, telling him "'[i]t's time to go.'" Id. ¶¶ 74-76. At this point the alleged assault ceased, and Defendant Bowman began letting other prisoners out onto the yard. Id. ¶ 78.

Upon returning to his cell, Plaintiff pressed the emergency call button and reported to Defendant Bowman – who answered the call – that he had been assaulted by Defendant Shaffer. Plaintiff asked for medical attention. Id. ¶ 84. Plaintiff avers that he was bleeding from his face onto his t-shirt, and that his face was swollen. Id. ¶ 85. About 20 minutes later, he was escorted to the medical department, where Defendants McAnany and Donna Doe took several photographs of Plaintiff's injuries. Id. ¶ 87. Plaintiff alleges that he was given "no actual medical treatment" at that time – despite his requests for "pain medication and/or an ice bag for his facial swelling." Id. ¶¶ 87-88. After his examination, Plaintiff was placed in a so-called "hard cell[,]" where he was housed until September 29, 2009. Id. ¶¶ 89, 117.

Plaintiff alleges that he requested medical attention numerous times during his stay in the hard cell. His initial request was made to Defendants Mega and Grimm less than one hour after the alleged assault – both of whom denied Plaintiff. Id. ¶ 89. Shortly thereafter, Plaintiff called out to Defendants Walter and Grimm, informing them that he had been assaulted by Defendant Shaffer and "wanted to see a doctor for a meaningful medical treatment." Id. ¶ 91. These Defendants made a note of Plaintiff's name and inmate number, but informed him that he would

have to sign up for sick call.  Id. ¶ 92.  Plaintiff requested a sick call slip, but was told that he would not be provided one until September 16, 2009, when "paperwork was passed out[.]"  Id.

At approximately 2:41 P.M. on September 14, 2009, Plaintiff saw Defendant Roxanna Doe, called her to his cell, complained of the alleged assault, and requested medical attention. Id. ¶ 94.  She allegedly took his name and inmate number, but did not provide treatment.  Id. ¶ 96.

On September 15, 2009, Plaintiff asked Defendant Duke for a sick call slip, but was again told that he would have to wait until the next day.  Id. ¶ 102.  Later that day, Plaintiff called Defendants Grimm and Donna Doe to his cell and requested medical attention.  Id. ¶ 104. Defendant Donna again took Plaintiff's name, and Defendant Grimm gave Plaintiff two band aids and two alcohol pads.  Id. ¶ 106.  Plaintiff alleges that, when he asked Defendant Grimm why he was not being provided with medical treatment, Defendant Grimm responded "'[c]ome on Anderson, you have been here long enough to know how it works with things like this, administration sticks together.'"  Id. ¶¶ 107-08.

Plaintiff alleges that Lieutenant Price – a non-party to this suit – came to Plaintiff's cell on September 15, 2009, and asked him what had happened to his mouth.  Plaintiff allegedly informed him that he had been assaulted, was in "severe pain[,]" and had been denied medical care.  Id.  ¶ 112.

Later that same day, Defendants Karfelt and Wilson were called to Plaintiff's cell. Plaintiff related his allegations of assault to Defendant Wilson, and asked for medical attention. Id. ¶ 114.  Defendant Wilson allegedly told Plaintiff to sign up for sick call – despite being informed that Plaintiff allegedly had been denied sick call slips.  Id. ¶ 115.

Finally, on September 16, 2009, Defendant Gibbs[3] allegedly came to Plaintiff's cell, but "refused to provide any meaningful treatment until [P]laintiff was out of the hard cell." Id. ¶ 116. However, later that day, Plaintiff was escorted by two corrections officers to the medical department, where Defendant Gibbs prescribed medication for Plaintiff, and ordered x-rays of his head, chest, neck, and shoulder. Id. ¶¶ 118-20. Plaintiff alleges that these x-rays were taken on September 24, 2009. Id. ¶ 121.

Plaintiff was examined by medical personnel on October 7, 2009, who prescribed various medications for his injuries. Id. ¶ 123. Plaintiff was seen again by medical staff on October 21, 2009, who referred him to a dentist and opined that he likely had a sprain. Id. ¶ 122. On October 23, 2009, Plaintiff submitted a sick call slip, complaining of body pain and loss of hearing. He was referred to a physician by defendant Gibbs. Id. ¶ 125. Plaintiff was seen by a physician on October 28, 2009, who prescribed various medications, to last until January 1, 2010. Id. ¶¶ 124-26.

Plaintiff alleges that he received two "fraudulent misconduct[]" reports on September 14, 2009, stemming from the incident with Defendant Shaffer.[4] Id. ¶ 98. One was issued by Defendants Shaffer and Rauenswinder, and the other by Defendant Bowman. Plaintiff was found guilty of the misconducts alleged in these reports, although he pleaded not guilty to them.

---

[3] The record indicates that the actual name of "Defendant Gibbs" is Michelle Howard-Diggs. See (Doc. 36) at 1. In order to remain consistent with Plaintiff's filings in this case, this Court will continue to refer to her as "Defendant Gibbs."

[4] These were misconduct reports A-548351 and A-548352. (Doc. 3) ¶ 97. Plaintiff does not submit either misconduct report as an exhibit to his complaint. However, he did file the denial of his initial appeal from his adjudication of guilt of the misconducts alleged in report A-548351. (Doc. 3-6) at 21.

Id. ¶ 100. On October 10, 2009, Plaintiff filed grievance 289881 with respect to the assault that he allegedly received at the hands of Defendant Shaffer on September 14, 2009. Id. ¶ 124.

Plaintiff also alleges that Defendants were aware of Defendant Shaffer's alleged "proclivity for violence against prisoners." Id. ¶ 129. He specifically alleges that Defendants Folino, Santoya, Bowman, Grimm, Rauenswinder, Bogden, Nelson, Tanner Stump, Rush, Duke, Mega, and Karfelt "knowingly, deliberately, and maliciously failed to intervene in the assault" on him. Id. ¶ 141. While Plaintiff does not explicitly state the basis for his assertion of how these Defendants would have gained their alleged "knowledge" of the impending alleged assault, it is implicit throughout the complaint that this would have been through the prior grievances filed by Plaintiff concerning Defendant Shaffer's alleged bad behavior. Plaintiff asserts that the acts or omissions of these Defendants resulted in violations of his rights under the Eighth Amendment, various state tort laws, and Article I, § 13 of the Pennsylvania Constitution. Id. ¶ 144.

Similarly, Plaintiff claims that Defendants Bowman, Grimm, Rauenswinder, Bogden, Tanner, Nelson, Stump, Rush, Duke, Mega, and Karfelt entered into a conspiracy to violate his right to remain free from cruel and unusual punishment under the Eight Amendment. Id. ¶¶ 147, 150. He also seeks relief under Article I, § 13 of the Pennsylvania Constitution, and under various state tort laws as well. Id. ¶ 150.

Plaintiff next claims that Defendants Folino, Santoya, Bowman, Grimm, Bogden, Rauenswinder, Nelson, Stump, Rush, Duke, Karfelt, Mega, and Tanner, engaged in a "custom and policy" of failing to address claims of prisoner abuse, and failed to discipline properly offending members of the prison's staff. Id. ¶¶ 153a-b. He alleges that this resulted in acquiescence to prisoner abuse by staff. Id. ¶ 153c. He also claims that the prisoner grievance

process is rote and perfunctory.  Id. ¶ 154d.  Plaintiff argues that this alleged "custom and policy" violated his rights under the Eighth Amendment to the Constitution of the United States, as well as Article I, § 13 of the Pennsylvania Constitution, and various state tort laws.  Id. ¶ 156.

Finally, Plaintiff alleges that Defendants Gibbs, McAnany, Wilson, Walter, Donna Doe, and Roxanna Doe violated his rights under the Eighth Amendment, Article I, § 13 of the Pennsylvania Constitution, and various state laws, by failing to provide proper medical treatment after his alleged assault on September 14, 2009.  Id. ¶ 164.

Plaintiff seeks only damages with respect to all of his legal claims.


**B.  Analysis**

**1.  Federal Claims under Section 1983.**

In order for a claim to be cognizable under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  First, the alleged misconduct giving rise to the cause of action must have been committed by a person acting under color of state law; and second, the defendants' conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  Parratt v. Taylor, 451 U.S. 527, 535 (1981), (overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986)).


a.  Eleventh Amendment Immunity

Plaintiff indicates that this suit is brought against Defendants in both their individual and official capacities.  (Doc. 3) at 12.  When an individual Commonwealth employee is sued in his or her official capacity, the action is considered to be against the Commonwealth itself.  See Kentucky v. Graham, 473 U.S. 159, 166 (1985).  A lawsuit for damages against a state is barred

by the Eleventh Amendment. <u>Quern v. Jordan</u>, 440 U.S. 332, 340-341 (1979). The immunities available to the individual Defendants sued in their official capacities are the same as those possessed by the Commonwealth. <u>Graham</u>, 473 U.S. at 165-67. It is true that "[a] State's immunity from suit is not absolute. Congress may abrogate a State's sovereign immunity in the exercise of its power to enforce the Fourteenth Amendment, and a State may consent to suit by making a clear declaration that it intends to submit itself to federal court jurisdiction." <u>Lombardo v. Pennsylvania Dep't of Pub. Welfare</u>, 549 F.3d 190, 195-96 (3d Cir. 2008). However, Congress has not abrogated the states' immunity from suit in section 1983 actions. <u>Nails v. Pennsylvania Dep't of Transp.</u>, 414 F.App'x 452, 455 (3d Cir. 2011) (citing <u>Quern</u>, 440 U.S. at 342-45). Additionally, Pennsylvania has withheld its consent from suit in federal court. <u>See</u> 42 Pa. Cons. Stat. Ann § 8521(b); <u>See also</u> <u>Nails</u>, 414 F.App'x at 455 (citing <u>Laskaris v. Thornburgh</u>, 661 F.2d 23, 25 (3d Cir. 1981)). Thus, it is apparent that Defendants are immune from suit for damages in their official capacities. Accordingly, such claims should be dismissed.[5] As it is clear that leave to amend would be futile, dismissal should be with prejudice. <u>See</u> <u>Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.</u>, 482 F.3d 247, 251 (3d Cir. 2007).

---

[5] Despite the fact that Defendants do not raise this argument in their motions to dismiss, it is still proper for this Court to raise it. 28 U.S.C. § 1915 requires the federal courts to review complaints filed by persons that are proceeding IFP and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). Thus, a court must dismiss, <i>sua sponte</i>, a complaint that lacks arguable merit in fact or law. <u>Stackhouse v. Crocker</u>, 266 F.App'x 189, 190 (3d Cir. 2008) (citing <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989)). The standard for reviewing a complaint under this section 1915(e)(2)(B) is the same as that for determining a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. <u>See</u> <u>Tourscher v. McCullough</u>, 184 F.3d 236, 240 (3d Cir. 1999); <u>see also</u> <u>Banks v. Mozingo</u>, No. 08-004, 2009 WL 497572, at * 6 (W.D. Pa. Feb. 26, 2009) (Cercone, J.). Based on the above analysis, it is clear that Plaintiff's claims lack merit. As such, they should be dismissed. Additionally, as it appears that leave to amend would be futile, dismissal should be with prejudice.

b.  <u>Failure to Exhaust Administrative Remedies</u>

Under the Prisoner Litigation Reform Act ("PLRA"), the mandatory exhaustion

requirement mandates the following:

> (a)  Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  Before filing a civil action, a prisoner-plaintiff must exhaust his

administrative remedies.  Booth v. Churner, 206 F.3d 289, 300 (3d Cir. 2000), aff'd, 532 U.S.

731 (2001).

The PLRA requires "proper exhaustion," meaning that a prisoner must complete the

administrative review process in accordance with the applicable procedural rules, including

deadlines.  Woodford v. Ngo, 548 U.S. 81, 90-91 (2006) ("[p]roper exhaustion demands

compliance with an agency's deadlines and other critical procedural rules . . .").  This is the

functional equivalent of the procedural default requirement in the habeas context.  Spruill v.

Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004

As a general matter, the fact that a prisoner-plaintiff has failed to exhaust available

administrative remedies is an affirmative defense that must be pleaded and proven by the

defendants.  Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).  As such, it would be improper for

a court to dismiss a case, *sua sponte* under § 1915(e), merely because a prisoner-plaintiff has

failed to plead adequately that he or she has fulfilled the requirement of § 1997e to exhaust

available administrative remedies.  Id.  However, this does not mean that dismissal for failure to

exhaust always must be raised by a defendant.  As stated above, under the Rule 12(b)(6)

standard, which is applicable in a § 1915(e) analysis, a court must examine a plaintiff's factual

assertions and determine whether they, if taken as true, would entitle a plaintiff to relief. <u>Jones v. Bock</u>, 549 U.S. 199, 215 (2007).

DOC Defendants argue that Plaintiff has failed to exhaust his claims against Defendants Folino, Santoya, Bowmann, Grimm, Rauenswinder, Stump, Duke, Kerfelt, McAnany, Wilson, Walter, Donna Doe, Roxanna Doe, Mega, and Tanner. (Doc. 43) at 13. In support of this, they cite to grievance numbers 281776 and 282575 – which they assert do not identify the above Defendants. <u>Id.</u>

As an initial matter, the undersigned recognizes that DOC Defendants submitted copies of grievance numbers 281776 and 282575 as exhibits to the motion to dismiss. DOC Defendants' copy of grievance 281776, (Doc. 43-1) at 2-3, is the same as that provided by Plaintiff as an exhibit to his complaint. (Doc. 3-2) at 2-3. This grievance, which relates to Defendant Shaffer's alleged denial of one period of outdoor exercise to Plaintiff on July 16, 2009, and Defendant Bogden's later alleged interference with Plaintiff's initial attempt to grieve that alleged event, names Defendants Shaffer, Bogden, and Nelson. <u>Id.</u> at 2-3. DOC Defendants' copy of grievance 282575, (Doc. 43-1) at 26, actually is one page shorter than the one submitted by Plaintiff as an exhibit to his complaint.[6] (Doc. 3-1) at 2-3. This grievance, relates to Defendant Shaffer's alleged pulling of Plaintiff's handcuffs through the slot in his cell door on July 27, 2009, as well as various threats that he allegedly made. <u>Id.</u> at 2. In this document, Plaintiff identifies Defendants Shaffer and Rush on the first page, <u>id.</u> at 2, and Defendants

_____

[6] To the extent that Defendants wish to argue against the veracity of the second page of grievance 282575 submitted by Plaintiff, such arguments are better made at the summary judgment stage, or at trial. On a motion to dismiss, a court is bound to accept all factual allegations made by Plaintiff as true. <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008). Thus, for the purposes of adjudicating the motions to dismiss currently before this Court, the undersigned will accept Plaintiff's two-page copy of grievance 282575 as being accurate.

Shaffer, Stump, Rush, Bogden, Rauenswinder, and Folino on the second.  Id. at 3.  Additionally, throughout his complaint, Plaintiff has indicated that he has attempted to grieve all of his claims against Defendants, but has been "stifled" by them.  See, e.g., (Doc. 3) ¶ 146.  In the end, it is not clear from the face of the complaint and documents submitted therewith that Plaintiff has failed to exhaust the administrative remedies available to him with respect to these Defendants, and he is not required to plead affirmatively that he has done so.  This Court is constrained to conclude that DOC Defendants have not met their burden in asserting this affirmative defense.  However, they should not be precluded from attempting to do so again, on a more fully developed record.

      c.   Eighth Amendment Denial of Medical Care

Prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care.  Estelle v. Gamble, 429 U.S. 97, 104 (1978).  In order to succeed on a claim of denial of medical treatment in violation of his Eighth Amendment rights, an inmate must show: (1) that he was suffering from a "serious" medical need; and (2) that the prison officials were "deliberately indifferent" to the serious medical need.  Id.  With respect to the first element of this standard, a medical need qualifies as "serious" when, for example, "it . . . has been diagnosed by a physician as requiring treatment."  Monmouth Cnty Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  A medical need also may be "serious" if it is so obvious that even a layperson would recognize the need for a doctor's attention.  Morrison v. Phillips, No. 06-812, 2008 WL 4308215, at *13 (D.N.J. Sept. 16, 2008) (quoting Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006)).

With respect to the second element – deliberate indifference – the Supreme Court has adopted a subjective approach. <u>Farmer v. Brennan</u> 511 U.S. 825, 842 (1994). <u>Farmer</u> teaches that:

> it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. . . . Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder [sic] may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

<u>Id</u>. at 842 (citations omitted). A showing of knowledge of "a substantial risk of serious harm" under <u>Farmer</u> requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837. Under this standard, it is not enough that an official merely should have been aware of the risk to an inmate. The official must be "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,'" and then actually "'draw the inference.'" <u>Natale v. Camden Cnty. Corr. Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003) (quoting <u>Farmer</u>, 511 U.S. at 837). The United States Court of Appeals for the Third Circuit has held that this standard may be met in several scenarios, including "when a doctor is intentionally inflicting pain on [a] prisoner," and when the denial of "reasonable requests for medical treatment . . . exposes the inmate to undue suffering[.]" <u>Spruill</u>, 372 F.3d at 235 (internal quotation marks and citations omitted). This standard also is met when "a prison official . . . knows of a prisoner's need for medical treatment but intentionally refuses to provide it" or "delays necessary medical treatment based on a nonmedical reason." <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999). However, acts that would rise only to the level of medical malpractice,

or mere disagreement over a course of treatment, are not violations of the Eighth Amendment. Spruill, 372 F.3d at 235.

Moreover, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Farmer, 511 U.S. at 845. Additionally, once a prisoner is under a physician's care, a non-medical prison official cannot be considered to be deliberately indifferent merely for failure to respond to a prisoner's medical complaints. Spruill, 372 F.3d at 236 (citing Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993)). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill, 372 F.3d at 236.

Plaintiff alleges that the treatment, or lack thereof, that he received from Defendants Gibbs, McAnany, Wilson, Walter, Donna Doe, and Roxanna Doe during the three-day period from September 14 – 16, 2009, violated his constitutional rights under the above standard.[7] (Doc. 3) ¶¶ 127, 159. Plaintiff's claims against these Defendants are deficient for several reasons.

First, Plaintiff does not plead anywhere in his complaint that he suffered from a serious medical need during the applicable period of time. Plaintiff factual allegations indicate that he told the above Defendants only that he was assaulted, and wanted medical treatment.

---

[7] The DOC Defendants appear to construe the complaint as an attempt to assert denial of medical care liability on other, non-medical Defendants as well. However, it is clear from the language in of the complaint that Plaintiff means to assert liability in connection with his medical care only with respect to the above-named Defendants. (Doc. 3) at 35. Even if the complaint could be read to include other, non-medical Defendants in this claim, the rule of the Court of Appeals for the Third Circuit in Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993) would preclude such claims, as it is clear from Plaintiff's factual allegations that he was placed under the care of medical professionals within minutes of initially requesting treatment on September 14, 2009.

Allegations of loss of hearing and pain throughout his body do not appear until October 23, 2009, when Plaintiff alleges that he submitted a sick call slip asking for treatment of these symptoms.  Id. ¶ 125.

Second, Plaintiff's factual allegations indicate that he was receiving at least some treatment during the period of September 14 – 16, 2009.  He avers to having been examined by Defendants McAnany and Donna Doe shortly after his initial request for medical treatment after the alleged assault.  Id. ¶¶ 86-87.  While he claims in the complaint to have received "no actual medical treatment" during this examination, id. ¶ 87, this assertion is belied by his own language in several grievances that he filed after the fact, which are submitted as exhibits to the complaint. Specifically in his appeal to the chief grievance coordinator of from the denial of grievance number 295903, on December 23, 2009, Plaintiff indicated that he had been given Robaxin and Ibuprofen on September 14, 2009.  (Doc. 3-5) at 7.  Plaintiff also indicates in later grievance, number 304741, that "medical staff according to policy and procedure did a complete incedent [sic] report on Sept [sic] 14, 2009."  (Doc. 3-7) at 2.  Plaintiff also indicates that despite Defendant Gibbs's initial alleged refusal to provide "meaningful treatment[,]" (Doc 3) ¶ 116, she provided treatment that he apparently found to be "meaningful" "only hours later[.]" (Doc. 3-7) at 9; (Doc. 3) ¶¶ 118-20.  Plaintiff further states in the body of his complaint that, on September 15, 2009, he received band aids and alcohol pads for his injuries.  (Doc. 3) ¶ 106.

Finally, given that Plaintiff has not provided any factual allegations that he exhibited, or complained of, any symptoms between September 14 and 16, 2009, that would indicate that he was experiencing a serious medical need, it logically follows that his pleadings are insufficient to demonstrate that the above Defendants displayed deliberate indifference to it.  Plaintiff has utterly failed to plead, plausibly, that Defendants possessed the culpable state of mind required in

Eighth Amendment denial of medical care cases. Accordingly, this claim should be dismissed against the Defendants, against whom it is asserted. However, as it is not certain that leave to amend would be futile, and out of an abundance of caution, dismissal should be without prejudice to filing an amended complaint, if appropriate, with respect to this claim.[8]

### d. Failure to Intervene

The Court of Appeals for the Third Circuit has recognized that the failure of a corrections officer to intervene in certain acts, such as an unjustified use of force, "can be the basis of liability for an Eighth Amendment violation under § 1983 . . . ." Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002). Consequently, the failure or refusal to intervene in another officer's assault on an inmate will create direct liability for the non-intervening officer who did not physically participate in an excessive use of force. Id. at 650-51.

However, in order for liability to attach under section 1983 for the failure to intervene in another's use of excessive force, a plaintiff must show that: (1) the defendant failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was "a realistic and reasonable opportunity to intervene." Smith, 293 F.3d at 651; see also McCullough v. Miller, No. 06-514, 2008 WL 4361254, at *9 (W.D. Pa. Sept. 24, 2008) (Lancaster, J.). In determining whether an opportunity to intervene existed, courts take into account many factors, "including the temporal length of the alleged assault, the proximity of the non intervening officer to the alleged assault, the ability of the non intervening officer to perceive and/or hear the alleged assault, etc." McCullough, 2008 WL 4361254, at *9

---

[8] Nothing in this analysis should be construed to address Plaintiff's state tort claims against these Defendants. Indeed, as no medical Defendant appears to have addressed tort liability in their motions, such claims should survive dismissal.

(citing <u>Swinyer v. Cole</u>, No. C04-5348, 2006 WL 1874100, at *3 (W.D. Wash. July 6, 2006); <u>Mitchell v. James</u>, No. 4:04CV1068, 2006 WL 212214, at *5 (E.D. Mo. Jan. 27, 2006)).

Plaintiff claims that Defendants Folino, Santoya, Bowman, Grimm, Rauenswinder, Bogden, Nelson, Tanner, Stump, Rush, Duke, Mega, and Karfelt failed to intervene in the assaults that he allegedly received at the hands of Defendant Shaffer. (Doc.3) at 27. However, Plaintiff has failed to allege any facts that, if true, would lead to the conclusion that these Defendants (save Defendant Rauenswinder) had any knowledge that the alleged assaults were occurring or, if they did, that they were in a position to do anything about them. Plaintiff makes no allegations that Defendants Folino, Santoya, Grimm, Bogden, Nelson, Tanner, Duke, Mega, or Karfelt were anywhere near the locations of the alleged assaults on July 27 and September 14, 2009. With respect to the alleged assault of September 14, 2009, his allegations regarding Defendants Stump and Rush cease when they transferred custody of Plaintiff to Defendant Shaffer – well before Plaintiff was taken to the prison yard. Defendant Bowman is alleged only to have opened Plaintiff's cell door, and to have taken other inmates to the yard about five minutes after Plaintiff himself entered it, and after the alleged assault had finished. As such, Plaintiff's failure to intervene claims against these Defendants should be dismissed. However, as it is not clear that it would be futile to do so, leave to amend should be granted.

However, Plaintiff's allegations against Defendant Rauenswinder include that he allegedly blocked the view of the yard of the other corrections officers on duty by standing in front of a window, and warned Defendant Shaffer that it was "time to go." (Doc. 3) ¶ 76. These allegations, if true, could lead a reasonable trier of fact to conclude that Defendant Rauenswinder (1) knew of the alleged assault as it was happening on September 14, 2009; and (2) had the

opportunity to intervene, but did nothing. Accordingly, Defendant Rauenswinder's motion to dismiss should be denied with respect to this claim.

### e. Section 1983 Conspiracy

In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989); Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989). The Court of Appeals for the Third Circuit has noted that a civil rights conspiracy claim is sufficiently alleged if the complaint details the following: (1) the specific conduct that violated the plaintiff's rights, (2) the time and the place of the conduct, and (3) the identity of the officials responsible for the conduct. Oatess v. Sobolevitch, 914 F.2d 428, 431 n.8 (3d Cir. 1990).

A plaintiff must allege conspiracy with particularity even though a heightened pleading standard generally does not apply to civil rights actions. Bieros v. Nicola, 860 F.Supp. 223, 225 (E.D. Pa. 1994) (citing Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)). A complaint alleging a conspiracy must make "factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events." Spencer v. Steinman, 968 F.Supp. 1011, 1020 (E.D.Pa. 1997). See also Loftus v. Southeastern Pa. Transp. Auth., 843 F.Supp. 981, 987 (E.D. Pa. 1994) ("[w]hile the pleading standard under [Fed.R.Civ.Proc.] Rule 8 is a liberal one, mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the Rule's requirements").

The essence of a conspiracy is an agreement or concerted action between individuals. See D.R. by L.R., 972 F.2d at 1377; Durre, 869 F.2d at 545. A plaintiff must therefore allege with particularity facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive a plaintiff of a protected federal right. See D.R. by L.R., 972 F.2d at 1377; Rose, 871 F.2d at 366. Where a civil rights conspiracy is alleged, there must be specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation. Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991)).

Additionally, as section 1983 does not create a cause of action for conspiracy in and of itself, a plaintiff must also allege some underlying deprivation of a constitutional right. Davis v. Wilson, No. 08-589, 2009 WL 688912, at *12 (W.D.Pa. Mar 12, 2009) (Hay, Mag.J.) (quoting Holt Cargo Systems, Inc. v. Delaware River Port Auth., 20 F.Supp.2d 803, 843 (E.D. Pa. 1998)); see also Hickson v. Marina Assoc.s, 743 F.Supp.2d 362, 377 n.22 (D.N.J. 2010) ("[t]he theory of conspiracy does not yield an independent cause of action under Section 1983, but instead presents merely a means to impute liability to other wrongdoers for violations of federal rights").

Plaintiff claims that Defendants Bowman, Grimm, Rauenswinder, Bogden, Tanner, Nelson, Stump, Rush, Duke, Mega, and Karfelt entered into a conspiracy violate his rights. (Doc. 3) at 29. Presuming that Defendant Shaffer's alleged assault of Plaintiff on September 14, 2009, indeed violated his constitutional rights, Plaintiff makes no allegations that, if true, plausibly would lead to the conclusion that Defendants Grim, Bogden, Tanner, Nelson, Mega, or Karfelt had any knowledge of Defendant Shaffer's intent to assault Plaintiff, let alone

their agreement to carry out such an assault.[9]  The same is true of Defendant Stump and Rush, who, according to Plaintiff's allegations of fact, merely brought Plaintiff out of his cell and transferred custody of him to Defendant Shaffer so that he could be taken to the prison yard for his daily exercise.  Similarly, Defendant Bowman is alleged to have opened to Plaintiff's cell, and brought additional inmates to the yard after the alleged assault was over.  These allegations are insufficient to show the meeting of the minds necessary to extend liability to these defendants for Defendant Shaffer's alleged assault.  As such, this claim should be dismissed with respect to these Defendants.  However, as it is not clear that it would be futile to do so, leave to amend should be granted.

With respect to Defendant Bogden's alleged interference with Plaintiff's grievance on or about July 17, 2007, not only has he failed to allege facts that, if true, would plausibly show an agreement to violate his rights, but, for the reasons state in Parts II.B.1.f and i, infra, he has not shown the violations of an underlying constitutional right.  Thus, Plaintiff's conspiracy claims against Defendant Bogden with respect to this alleged act should be dismissed.  As it is clear that leave to amend would be futile, dismissal should be with prejudice.

However, as in Part II.B.1.d, supra, Plaintiff's allegations that Defendant Rauenswinder blocked the window to the yard during the alleged assault, and warned Defendant Shaffer to end his assault when it appeared that other corrections officers were coming, if true, would be enough for a reasonable trier of fact to conclude that he and Defendant Shaffer entered into an agreement to assault Plaintiff.  Accordingly, Defendant Rauenswinder's motion to dismiss should be denied with respect to this claim.

---

[9] Indeed, Plaintiff makes no factual allegations connecting them to the assault at all, instead apparently pulling his legal claim of conspiracy directly from the ether.

f. Denial of Exercise

To the extent that Plaintiff attempts to argue that the denial of a single period of outdoor exercise on July 16, 2009, violated his rights under the Eighth Amendment, his claims must fail as a matter of law. It is well established that brief periods of denial of outdoor recreation do not rise to the level of a deprivation that is sufficiently serious to "result in the denial of the minimal civilized measure of life's necessities." See Farmer, 511 U.S. 825, 834 (1994) (internal citation and quotation omitted); see also Barkley v. Ricci, No. 11-1712, 2011 WL 2938122, at *2 (3d Cir. July 22, 2011) (citing with approval Knight v. Armontrout, 878 F.2d 1093, 1996 (8th Cir. 1989) (holding that the denial of outdoor recreation for 13 days was not cruel and unusual punishment)). Accordingly, such claims, to the extent that they are made, should be dismissed with prejudice.

g. Threats

To the extent that Plaintiff seeks relief for various threats made by Defendants – as alleged throughout the complaint – he has failed to state a claim as a matter of law. There is a long established rule that mere verbal threats do not give rise to constitutional violations, and are thus not actionable under section 1983. See, e.g., Bartelli v. Lewis, No. 04-0908, 2005 WL 2406048, at *2 (M.D. Pa. Sept.29, 2005). Indeed, the allegation of verbal threats has been found to be insufficient to state a claim under section 1983 under a variety of circumstances. See, e.g., Pittsley v. Warish, 927 F.2d 3, 8 (1st Cir. 1991) ("threats causing fear for plaintiff's life [is] not an infringement of a constitutional right, [and] thus not actionable under § 1983") (abrogated on other grounds by Cnty. of Sacramento v. Lewis, 523 U.S. 833 (1998)); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir.1979) (allegation that sheriff laughed at and threatened to hang a prisoner did not state a constitutional claim under § 1983); Shabazz v. Cole, 69 F.Supp.2d 177,

201 (D. Mass. 1999) ("the weight of authority is that verbal threats, even abusive threats with racial epithets, do not, in the context of prison, violate an inmate's constitutional rights. 'Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983'"); O'Donnell v. Thomas, 826 F.2d 788, 790 (8th Cir. 1987) ("alleged verbal threats and abuse by jail officials at the hospital did not rise to the level of a constitutional violation"). Defendants' mere alleged verbal threats are not actionable under section 1983, and as it is clear that leave to amend with respect to those claims would be futile, dismissal should be with prejudice.

    h.  <u>Prison Misconducts</u>

Specifically, all that is constitutionally required of a prison misconduct proceeding is that the inmate be afforded an opportunity to be heard and to defend against misconduct charges. <u>Smith</u>, 293 F.3d at 653-654. Additionally, in order to satisfy due process, a prison misconduct hearing officer is merely required to base his or her decision on "some" supporting evidence. <u>See</u> <u>Sup't v. Hill</u>, 472 U.S. 445, 455 (1985) (requirements of due process are satisfied if some evidence supports decision by disciplinary board to issue sanctions). Disciplinary hearings are not part of the criminal prosecution and are intended to be informal and expeditious. <u>Flanagan v. Shively</u>, 783 F.Supp. 922, 930 (M.D. Pa. 1992) <u>aff'd</u> 980 F.2d 772 (3d Cir. 1992). An unfavorable decision is not the same as a denial of due process. <u>Griffin v. Spratt</u>, 768 F.Supp. 153, 158 (E.D. Pa. 1991) <u>rev'd</u> in part on other grounds, 969 F.2d 16 (3d Cir. 1992).

Plaintiff does not attach copies of the misconduct reports at issue, or the resulting hearing reports, as exhibits in support of his complaint. However, he does submit the denial of his appeal from misconduct A-548351. Additionally, DOC Defendants submit the reports associated with

misconducts A-548351 and A-558352 as exhibits in support of their motion to dismiss.  See (Doc. 43-1) at 9-22.

When ruling on a 12(b)(6) motion, a court may take into consideration information in addition to the complaint, such as "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n. 2 (3d Cir. 1994).  Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents.  Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).  Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment.  Spruill, 372 F.3d at 223; In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  Given the degree to which Plaintiff's false misconduct claims are based on the misconduct reports and hearing reports themselves, the fact that he indicates the misconduct numbers explicitly within the text of the complaint, and the fact that Plaintiff did not dispute the authenticity of the misconduct documents submitted by DOC Defendants as exhibits to their motion to dismiss, it is proper for this Court to consider those documents without converting the instant motion to a motion for summary judgment.

Based on the reports, and the hearing examiners findings, it is clear that "some evidence" existed to support Plaintiff's convictions.  Additionally, it is clear from the notes in the hearing reports that Plaintiff was afforded the ability to respond to the charges with his own version of events.  Thus, any Fourteenth Amendment Due Process claim made by Plaintiff with respect to these misconducts should be dismissed with prejudice, as a matter of law.

Additionally, Plaintiff's claims regarding the above misconduct charges may be read as allegations of retaliation by Defendants Shaffer and Rauenswinder. "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000) (internal quotes and citation omitted); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). In order to succeed on a claim of retaliation, a prisoner must demonstrate:

1) the conduct in which he was engaged was constitutionally protected;

2) he suffered "adverse action" at the hands of prison officials; and

3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)). To show an "adverse action," Plaintiff must demonstrate that Defendant's acts were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520, 535 (E.D. Pa. 2002) (quoting Allah v. Seiverling, 229 F.3d at 225).

If a plaintiff proves the above elements, the burden shifts to the state actor to prove that it would have taken the same action even without the unconstitutional factors. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). In the prison context, the state actor may rebut a plaintiff's claim by showing that his actions were motivated by legitimate penological objectives. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

To the extent that Plaintiff alleges that the above misconducts were issued out of retaliation for the filing of multiple grievances, his claims should be dismissed. First, the multiple grievances attached to the complaint as exhibits that post-date the filing of these misconduct reports indicate that Plaintiff was not dissuaded from continuing to engage in the activity that he alleges led to the charges. Second, Plaintiff's convictions, based on "some evidence[,]" demonstrates Defendants' legitimate penological interest in bringing the charges before a hearing examiner. Based on these facts, it is clear that Plaintiff cannot prevail on his claims with respect to these misconducts. Accordingly, as leave to amend would be futile, dismissal should be with prejudice.

i.  Grievance Claims

Prisoners do not have a constitutional right to prison grievance procedures. See, e.g., Heleva v. Kramer, 214 F.App'x 244, 247 (3d Cir. 2007) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)). As DOC Defendants correctly argue, any allegations that Defendants ignored or failed to respond properly to one of Plaintiff's grievances – or lost it during delivery – at worst would abrogate the need to exhaust administrative remedies with respect to the underlying claim. Accordingly, all claims raised against Defendants for losing or failing to respond properly to Plaintiff's grievances should be dismissed, as they are not cognizable under section 1983. Given the obvious futility of providing leave to amend this claim, dismissal will be with prejudice.

j.  Personal Involvement

It is well established that no liability exists under section 1983 solely by means of vicarious liability or *respondeat superior*.  Shaw v. Stackhouse, 920 F.2d 1135, 1147 (3d Cir. 1990).  Instead, in order for section 1983 liability to attach, a plaintiff must show that a defendant was personally involved in the deprivation of his or her federal rights.  See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).  In cases involving a supervisory or reviewing defendant, personal involvement may be shown through "'allegations of personal direction or of actual knowledge and acquiescence.'"  Id. at 353 (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)).

In cases where a supervising official knowingly permits a continuing custom or policy that results in harm to a plaintiff, § 1983 liability may attach.  See Colburn v. Upper Darby Twp., 838 F.2d 663, 673 (3d Cir. 1988) (overruled in part on other grounds by Leatherman, 507 U.S. at 168).  At a minimum, such liability attaches "'only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate.'"  Colburn, 838 F.2d at 673 (quoting Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986)).  However, the denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish personal involvement for the purposes of section 1983.  See, e.g., Jefferson v. Wolfe, No. 04-44, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006) (citing Watkins v. Horn, No. CIV.A. 96-4129, 1997 WL 566080, at *4 (E.D. Pa. Sept. 5, 1997)); see also Pressley v. Beard, 255 F.App'x 216, 218 (3d Cir. 2008) (affirming the dismissal of supervisory officials who merely failed to take corrective actions when grievances or investigations were referred to them); Cf. Antonelli v.

<u>Sheahan</u>, 81 F.3d 1422, 1430 (7th Cir. 1996) (holding that a state's inmate grievance procedure did not give rise to a liberty interest protected by the Due Process Clause).

Plaintiff generally alleges that Defendants Folino, Santoya, Bowman, Grimm, Bogden, Rauenswinder, Nelson, Stump, Rush, Duke, Karfelt, Mega, and Tanner maintained "accepted practices and customs . . . which knowingly [sic] placed this [P]laintiff in a dangerous position and/or increased risk of assault. (Doc. 3) ¶ 153. This appears to be an attempt to extend liability to them for Defendant Shaffer's alleged bad acts. However, Plaintiff has failed to plead any facts which, if true, would lead to the plausible conclusion that any of these Defendants (save, for the reasons stated above, Defendant Rauenswinder) had any personal involvement in, or knowledge of, Defendant Shaffer's alleged assaults on Plaintiff. <u>See</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S.__, 129 S.Ct. 1937, 1949 (2009) ("[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Instead, it appears from the language of the complaint, as well as the documents submitted therewith, that Plaintiff believes that these Defendants are liable simply because Plaintiff had filed grievances concerning about Defendant Shaffer in the past – which were denied, indicating that these Defendants did not possess actual knowledge of any misconduct on Defendant Shaffer's part. This clearly is not a basis for relief under section 1983. <u>See</u> <u>Jefferson</u>, 2006 WL 1947721, at *17. As such, Plaintiff's "custom and practice" claims against these Defendants should be dismissed. Additionally, as it is clear that any leave to amend would be futile, dismissal should be with prejudice

2. State Law Claims

The doctrine of sovereign immunity bars tort claims against the Commonwealth, its officials, and employees acting within the scope of their duties.[10] 1 Pa. Cons. Stat. Ann. § 2310. The Commonwealth has statutorily waived sovereign immunity, but only "for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity" in specific, enumerated exceptions. 42 Pa. Cons. Stat. Ann. § 8522(a). There are nine instances in which sovereign immunity has been waived by statute – these are negligent acts pertaining to: (1) vehicle liability; (2) medical professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa. Cons. Stat. Ann. § 8522(b)(1)-(9). These nine exceptions must be "strictly construed and narrowly interpreted." Brown v. Blaine, 833 A.2d 1166, 1173 (Pa. Cmwlth. Ct. 2003). "Commonwealth employee[s] [are] protected by sovereign immunity from the imposition of liability for intentional tort claims." La Frankie v. Miklich, 618 A.2d 1145, 1149 (Pa. Cmwlth. Ct. 1992).

After reviewing the claims in the complaint, it is clear that Plaintiff's state tort claims against the non-medical Defendants do not fall under the above nine exceptions. For this reason,

---

[10] Conduct of an employee is within the scope of employment only if: (1) it is of a kind that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is calculated, at least in part, by a purpose to serve the employer. Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000), (citing Restatement (Second) Agency § 228). Additionally, if force is intentionally used, "the use of force is not unexpectable" by the employer. Restatement (Second) Agency § 228(1)(d).

Plaintiff's state law tort claims for damages against all Defendants except Defendants Gibbs, McAnany, Wilson, Walter, Donna Doe, and Roxanna Doe should be dismissed. Additionally, as it is clear the leave to amend would be futile as a matter of law, dismissal should be with prejudice.

Plaintiff's claims against Defendants under Article I, §§ 13, 20, and 26 of the Pennsylvania Constitution are more problematic. A case that is instructive with respect to this issue is Jones v. City of Philadelphia, 890 A.2d 1188 (Pa. Cmwlth. Ct. 2006), a fairly recent case in which the Pennsylvania Commonwealth Court, sitting *en banc*, declined to create a cause of action for money damages in the case of an alleged violation of Article I, § 8 of the Pennsylvania Constitution. Id. at 1216. While Jones does not address the state constitutional provisions invoked by Plaintiff, the holding of the Commonwealth Court noted the lack of any state law in Pennsylvania that was analogous to section 1983, and indicated the Pennsylvania courts' reluctance to create a remedy for damages under the Constitution of Pennsylvania without benefit of legislative action. Id. at 1213.

Neither Plaintiff nor Defendants have identified any case in which the courts of Pennsylvania have explicitly held that a private cause of action for damages either does or does not exist under Article I, §§ 13, 20 or 26 of the Pennsylvania Constitution. This Court, in conducting independent research into this claim, was likewise unable to locate any such precedent from the state courts of Pennsylvania.

In Warren v. Township of Derry, the United States District Court for the Middle District of Pennsylvania, when confronted with a plaintiff's claim for recovery under Article I, § 26 of the Pennsylvania Constitution, noted that "deference to the state appellate courts on this issue [was] appropriate" and therefore declined to exercise supplemental jurisdiction over this

obviously complex and unresolved issue of Pennsylvania State law, invoking

28 U.S.C § 1367(c)(1). See also Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc,

140 F.3d 478, 487 (3d Cir. 1998) (affirming a federal court's refusal to extend jurisdiction over a

state law issue that would require that court to interpret a state's constitution, as deferral of the

matter was "out of respect for the right of a state court system to construe that state's own

constitution") (citing Doe v. Sundquist, 106 F.3d 702, 708 (6th Cir. 1997)).  Accordingly, this

Court will decline to exercise supplemental jurisdiction over this obviously complicated issue of

state constitutional law.  Thus, Plaintiff's claims arising from the Pennsylvania Constitution are

dismissed for lack of subject matter jurisdiction, without prejudice to him bringing those claims

in state court.


### III.  CONCLUSION

For the reasons stated above, it is respectfully recommended that Defendant Gibbs's

motion to dismiss (Doc. 36) be granted in part and denied in part.  It is further recommended that

the partial motion to dismiss filed by Defendants Bogden, Bowman, Donna Doe, Roxanna Doe,

Duke, Folino, Grimm, Kerfelt, McAnany, Mega, Nelson, Rauenswinder, Rush, Santoya, Stump,

Tanner, Walter, and Wilson ("DOC Defendants") (Doc. 42) be granted in part and denied in part.

Plaintiff's claims should be disposed of in the following manner:

1.  The following claims should be dismissed with prejudice: (a) Plaintiff's claims against

    Defendants in their official capacities; (b) Plaintiff's claims against Defendant Bogden

    concerning alleged interference in the grievance process; (c) Plaintiff's claims regarding

    denial of a period of exercise, alleged threats made by Defendants, allegedly false

    misconduct charges, and allegedly mishandled institutional grievances; (d) Plaintiff's

"custom and practice" claims; and (e) Plaintiff's state tort claims against all non-medical professional Defendants.

2. The following claims should be dismissed without prejudice to Plaintiff filing an amended complaint: (a) Plaintiff's Eighth Amendment denial of medical care claims; (b) Plaintiff's failure to intervene claims with respect to all Defendants except Defendant Rauenswinder; and (c) Plaintiff's remaining conspiracy claims against all Defendants except Defendant Rauenswinder.

3. Plaintiff's claims arising out of the Pennsylvania Constitution should be dismissed for lack of subject matter jurisdiction, without prejudice to Plaintiff re-filing in state court.

4. Defendants' motions to dismiss should be denied with respect to: (a) Plaintiff's failure to intervene claim against Defendant Rauenswinder; (b) Plaintiff's conspiracy claim against Defendant Rauenswinder; and (c) Plaintiff's state law tort claims against Defendants Gibbs, McAnany, Wilson, Walter, Donna Doe, and Roxanna Doe.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this report must be filed by September 6, 2011. Failure to file objections will waive the right to appeal. See Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

August 22, 2011                                    s/Cathy Bissoon
                                                   Cathy Bissoon
                                                   United States Magistrate Judge


cc:
**KEITH ANDERSON**
AS-3252
SCI Rockview
Box A
Bellefonte, PA 16823-0820