**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


KEITH ANDERSON,        )
        )
        Plaintiff,        )        Civil Action No. 10-937
        )        Chief Judge Gary L. Lancaster
        v.        )        Magistrate Judge Cynthia Reed Eddy
        )
LOUIS FOLINO, *et al.*,        )
        )
        Defendants.        )


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I**.     **RECOMMENDATION**

      For the reasons that follow, it is respectfully recommended that the Motions for Summary

Judgment filed by Defendants (ECF. Nos. 88 and 91) both be granted.

**II.**     **REPORT**

      On July 15, 2010, Plaintiff, Keith Anderson, an inmate currently confined in the State

Correctional Institution in Rockview, initiated this *pro se* prisoner's civil rights action pursuant

to 42 U.S.C. § 1983 against various individuals employed at the State Correctional Institution at

Greene (SCI-Greene). The case was referred to then Magistrate Judge Cathy Bissoon. On

December 3, 2010, the Medical Defendant filed a Motion to Dismiss (ECF No. 36) and on

December 22, 2012, the Commonwealth Defendants filed a Partial Motion to Dismiss (ECF No.

42). On August 22, 2011, Magistrate Judge Bissoon issued a Report and Recommendation

recommending that the pending motions to dismiss be granted in part and denied in part. On

September 19, 2011, Chief District Judge Gary L. Lancaster issued a Memorandum Order

granting in part and denying in part the motions to dismiss (ECF No. 55). As a result, Plaintiff's

claims regarding denial of a period of exercise, alleged threats made by Defendants, allegedly

false misconduct charges, allegedly mishandled institutional grievances, "custom and practice" claims, and state tort claims against all non-medical professional Defendants were dismissed with prejudice and Plaintiff was allowed the opportunity to file an amended complaint with respect to the remaining claims. Plaintiff filed an Amended Complaint on October 21, 2011 (ECF No. 58). The case was reassigned to me on October 27, 2011 upon the elevation of Cathy Bissoon to the District Court.

On March 14, 2012, Plaintiff filed a Second Amended Complaint (ECF No. 72). After allowing a period of discovery, on June 29, 2012, the Medical Defendant filed a Motion for Summary Judgment (ECF No. 88), a Brief in Support thereof (ECF No. 89), and a Concise Statement of Material Facts (CSMF) (ECF No. 90). Also on June 29, 2012, the Commonwealth Defendants filed a Motion for Summary Judgment (ECF No. 91), a Brief in Support thereof (ECF No. 92), and a CSMF (ECF No. 93).

On July 2, 2012, this Court issued an Order for Plaintiff to file responses to the pending motions for summary judgment (ECF No. 94). That four-page order specifically informed Plaintiff that the Local Rules of the United States District Court for the Western District of Pennsylvania require that a party opposing a motion for summary judgment file a responsive "concise statement, which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts by: (a) admitting or denying whether each fact contained in the moving party's Concise Statement of Material Facts is undisputed and/or material; (b) setting forth the basis for the denial if any fact contained in the moving party's Concise Statement of Material Facts is not admitted in its entirety ... with appropriate reference to the record; and (c) setting forth ... any other material facts that are allegedly at issue and/or that the opposing party asserts are necessary for the court to determine the motion for summary judgment." L.R. 56.C.1.

In addition, that Order clearly stated that, pursuant to our Local Rule 56.E, alleged material facts set forth in the moving party's Concise Statement of Material Facts or in the opposing party's Responsive Concise Statement, which are claimed to be undisputed, will, for the purpose of deciding the motion for summary judgment, be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party.

Plaintiff filed a Brief in Opposition to Defendants' Motion (ECF No. 96). However, Plaintiff failed to cite to any evidence of record in his Brief; nor did he file any concise counter statement of facts. Consequently, in accordance with our Local Rules, all factual averments contained in the Defendants' CSMFs will be deemed admitted for purposes of summary judgment. *Accord* <u>Enigh v. Miller</u>, Civil No. 08-1726, 2010 WL 2926213 (W.D. Pa. July 23, 2010) (collecting cases). *See also* <u>Cuevas v. United States</u>, Civil No. 09–43J, 2010 WL 1779690, at * 1 (W.D. Pa. Apr.29, 2010) ("Plaintiff's response to Defendant's Motion does not contain any basis for any ... denial of a fact and also fails to reference the record for each such denial. Though this Court must give certain latitude to a *pro se* litigant, it is not for the Court to sort through the entire record to determine the basis of an alleged disputed fact. As Plaintiff has failed to comply with our local rules, Defendant's Statement of Facts as set forth in [its Concise Statement of Material Facts] are admitted as true and correct.").[1]

---

[1] *See also* <u>Jourdan v. Jabe</u>, 951 F.2d 108, 109 (6th Cir. 1991) ("While *pro se* litigants may be entitled to some latitude when dealing with sophisticated legal issues, acknowledging their lack of formal training, there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer."). In short, a *pro se* litigant's failure to comply with a court order is not the same thing as "inartful pleading or a[ ] lack of legal training." *Id*. at 110.

### A. Standard of Review

Federal Rule of Civil Procedure 56(a)[2] provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Williams v. Borough of West Chester, 891 F.2d 458, 460–461 (3d Cir. 1989) (the non-movant must present affirmative evidence -- more than a scintilla but less than a preponderance -- which supports each element of his claim to defeat a properly presented motion for summary judgment).

The non-moving party cannot rest "solely on assertions made in the pleadings, legal memoranda, or oral argument," Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), but must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim.  Celotex, 477 U.S. at 322.  Thus, a plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case.  Id. at 322.  An issue is genuine only if the evidence is

---

[2]   Pursuant to the 2010 amendments to the Federal Rules of Civil Procedure, the oft-cited summary judgment standard is now located in Rule 56(a) rather than 56(c), with a slight change of wording.  Although the word "issue" has been replaced with "dispute," this change does not affect the substantive standard or the applicability of prior decisions construing the standard.  See Fed. R. Civ. P. 56(a) advisory committee's note.

such that a reasonable jury could return a verdict for the non-moving party. <u>Plaintiff v. Liberty</u>

<u>Lobby, Inc.</u>, 477 U.S. 242 (1986). The inquiry, then, involves determining whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

that one party must prevail as a matter of law. <u>Plaintiff</u>, 477 U.S. at 251–52. If a court, having

reviewed the evidence with this standard in mind, concludes that "the evidence is merely

colorable ... or is not significantly probative," then summary judgment may be granted. *Id*. at

249–50. Finally, while any evidence used to support a motion for summary judgment must be

admissible, it is not necessary for it to be in admissible form. <u>Celotex</u>, 477 U.S. at 324.

## B. <u>Relevant Material Facts</u>[3]

The record evidence shows the following. Keith Anderson is a state inmate currently

incarcerated at the State Correctional Institution at Rockview (SCI-Rockview). The events at

issue in this action occurred at SCI-Greene.

On September 14, 2009, at approximately 7:30 a.m., correctional officers Stump and

Bogden entered Plaintiff's cell and performed a strip search. Officer Stump took Plaintiff to the

top of the stairs, where he was passed to Officers Shaffer and Rauenswinder so that he could be

escorted to the yard for outdoor exercise. Plaintiff told the officers that he wanted to go back and

was refusing the yard. Plaintiff was taken to the bottom of the steps, where Officers Shaffer and

Rauenswinder proceeded to escort him to the yard. Once they had passed through the door,

Plaintiff tore away from Officer Shaffer's grip. Officer Shaffer stated that Plaintiff pulled away

from him and then "bladed his body towards him" and stated, "What are you going to do now?"

---

[3] The Court will not address any claims that Plaintiff included in his Second Amended Complaint that previously were dismissed with prejudice by this Court (ECF No. 55). Accordingly, any facts associated with the dismissed claims will not be included.

Officer Shaffer gave Plaintiff an order to turn around, which Plaintiff refused. Officer Shaffer gained control of Plaintiff by grabbing him and placing him on the ground in an aggressive manner. He then was escorted back to his cell where he was secured without further incident. The incident lasted approximately 27 seconds and was not recorded on any video surveillance. Officer Rauenswinder was present during this episode and did not see or witness Officer Shaffer strike or choke Plaintiff.

As a result of this incident, Plaintiff was issued Misconduct No. A548351 charging him with #1 - Assault, #15 - threatening an employee or their family with bodily harm; and #35 - refusing to obey an order. Plaintiff received a misconduct hearing where he was found guilty of threatening an employee and refusing to obey an order, the assault charge was dismissed. He received a total of 90 days disciplinary custody as a result. Plaintiff unsuccessfully appealed this determination through all levels of administrative review.

After Plaintiff was secured in his cell he hit his call button and demanded to see a lieutenant. He told Sergeant Bowman that he would need an extraction team and that he was going to "fu** Officer Shaffer up." As a result of this incident, Plaintiff was issued Misconduct No. A548352 charging him with threatening an employee or their family with bodily harm. Plaintiff received a misconduct hearing where he was found guilty and received 30 days of disciplinary custody. Plaintiff unsuccessfully appealed this determination through all levels of administrative review.

After Plaintiff was returned to his cell, he requested medical attention. About 20 minutes later, Plaintiff was escorted to the medical department, where Defendants McAnany and Donna Doe took several photographs of Plaintiff's injuries. When his injuries were being assessed by medical staff, he said, "It is just my lip. It ain't nothin." Medical staff noted that there was a

superficial laceration to Plaintiff's upper left lip, a superficial abrasion to left side of head, and a superficial abrasion to the left shoulder. The areas were cleaned with an alcohol pad and there was no bandage necessary. Photographs from the incident show that Plaintiff was not seriously injured. Plaintiff's injuries were consistent with what Officer Schaffer reported. Plaintiff's injuries were not consistent with Plaintiff's allegation that Officer Shaffer punched him 6 times in the face.

On September 15, 2010, Plaintiff submitted a request for a sick call and was placed on the sick call list for the 16th. On September 16, 2010, Plaintiff was seen by Ms. Howard-Diggs in the medical department, at which time she performed an examination of his face, ears and shoulder area. Ms. Howard-Diggs assessed him as having left facial pain and left shoulder pain and prescribed Percogesic (pain medications), three times a day for 14 days, and x-rays of the facial bones and left shoulder. The x-rays taken of Plaintiff's facial bones and left shoulder were normal with no evidence of fracture. On October 7, 2009, Plaintiff was seen by the dentist and reported his pain had been subsiding. Plaintiff was seen again by Ms. Howard-Diggs on October 23, 2009, at which time she prescribed additional pain medications to address his complaints of pain. Ms. Howard-Diggs did not see Plaintiff after this date.

## C. Liability under 42 U.S.C. § 1983

Plaintiff seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S.

327, 330-331 (1986).  There is no question that the Defendants were acting under color of state law with respect to the actions alleged in the Second Amended Complaint.  Therefore, the issue is whether Plaintiff has alleged a violation of any right under federal law.    To this end, Plaintiff sets forth three causes of action in his Second Amended Complaint (ECF No. 72, pp. 54-57).  These claims are addressed below.

## D. First Amendment

In his first cause of action, Plaintiff asserts that Defendants violated his rights as secured by the First Amendment of the United States Constitution, which provides as follows.

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. Amend. I.  Specifically, Plaintiff asserts that his right to petition the government was violated by Defendants' actions in:  failing to address his grievances; tampering with his mail; subjecting him to arbitrary actions; viciously attacking him; issuing misconducts against him; and threatening him.

### 1.    Retaliation

Plaintiff has alleged that Defendants violated his rights by retaliating against him.  "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."  Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).  Thus, retaliation for the exercise of a constitutionally protected right may violate the protections of the First Amendment, which is actionable under section 1983.  Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990).  However, merely alleging the fact of retaliation is insufficient; in order to

prevail on a retaliation claim, a plaintiff must show three things: (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. *See* Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997).

With respect to the first factor, it is well settled that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right. Allah, 229 F.3d at 224-25. Accordingly, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges he was denied. Rauser, 241 F.3d at 333. Rather, the first requirement a Plaintiff must show is that the conduct which led to the alleged retaliation was constitutionally protected. *Id*.

The second element requires a prisoner to show that he suffered some "adverse action" at the hands of the prison officials. A plaintiff can satisfy the second requirement by demonstrating that the "adverse" action "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *See* Allah, 229 F.3d 220 at 225. Adverse actions that are sufficient to support a retaliation claim include filing false misconduct reports, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), transferring a prisoner to another prison, Rauser, 241 F.3d at 333, and placing a prisoner in administrative custody, Allah, 229 F.3d at 225.

The third factor requires that there be a causal link between the exercise of the constitutional right and the adverse action taken against the prisoner. Rauser, 241 F.3d at 333-34. This may be established by evidence of a temporal proximity between the prisoner's

protected activity and the defendant's adverse action; however, the timing of the alleged retaliatory action must be suggestive of retaliatory motive.

If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. Mt. Healthy, 429 U.S. at 287. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.

In establishing the elements of a retaliation claim, a plaintiff must come forward with more than "general attacks" upon the defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that the plaintiff had carried his burden of proving the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (internal citations omitted). Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. *See* Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). Finally, allegations of *de minimis* acts of retaliation do not state a claim under § 1983. Thaddeus-X v. Blatter, 175 F.3d 378, 397 (6th Cir. 1999); Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001) (holding that a *de minimis* retaliatory act is outside the ambit of constitutional protection).

In response to the pending motions for summary judgment, Plaintiff was required to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.[4] In order to meet this burden, Plaintiff was required to "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. Moreover, our local rules required Plaintiff to set forth a responsive concise statement setting forth any material facts that are allegedly at issue and/or that the opposing party asserts are necessary for the court to determine the motion for summary judgment. L.R. 56.C.1.

Here, Plaintiff did not file a responsive concise statement of facts. Nor has he submitted anything in response to the pending motions where he has designated specific facts of record in support of his claims of retaliation. Unsupported allegations are not sufficient when faced with a motion for summary judgment. Mincy v. Chmielsewski, Civil No. 12-1996, 2013 WL 49765, 4 (3d Cir. Jan.4 , 2013). In light of the above, Defendants are entitled to summary judgment as to Plaintiff's retaliation claims. *See also* Marten v. Hunt, 479 Fed. App'x 436 (3d Cir. 2012) (affirming District Court grant of summary judgment finding that verbal harassment does not rise to the level of adverse action sufficient to support a retaliation claim); Booth v. Lorenzo, 275 Fed. App'x 113 (3d Cir. 2008) (holding that plaintiff failed to set forth any evidence in the record to dispute defendants' assertion that they knew nothing about the plaintiff's protected activity).

2.  Access to Courts

Plaintiff made two allegations that can be construed as denial of access to the courts claims under the First Amendment: that the Defendants interfered with his mail and that

---

[4] See Note 1, p. 9 (ECF No. 92).

Defendants refused to process his grievances.[5]   The right of access to the courts is guaranteed by

the First Amendment of the United States Constitution.  <u>Bounds v. Smith</u>, 430 U.S. 817 (1977).

An inmate who alleges a violation of the right of access to the courts must show actual injury.

<u>Lewis v. Casey</u>, 518 U.S. 343, 349–50 (1996).  This can be done by showing that the Defendants'

actions resulted in the loss or rejection of a claim.  <i>Id</i>. at 351.

In <u>Christopher v. Harbury</u>, 536  U.S. 403 (2002), the Supreme Court set forth specific

criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of

right to access to the courts.  Specifically, the Supreme Court held that, in order to state a claim

for denial of access to courts, a party must identify all of the following in the complaint:  1) a

non-frivolous, underlying claim: 2) the official acts frustrating the litigation; and 3) a remedy

that may be awarded as recompense but that is not otherwise available in a future suit.

<u>Christopher</u>, 536 U.S. at 415.  The Court explained that the first requirement mandated that the

plaintiff specifically state in the complaint the underlying claim in accordance with the

requirements of Rule 8(a) of the Federal Rules of Civil Procedure to the same degree as if the

underlying claim was being pursued independently.  <u>Christopher</u>, 536 U.S. at 417.  In this regard,

the statement must be sufficiently specific to ensure that the district court can ascertain that the

claim is not frivolous and that the "the 'arguable' nature of the underlying claim is more than

---

[5]   The Court notes that it is well established that prisoners do not have a constitutional right to
prison grievance procedures.  <i>See, e.g.</i>, <u>Heleva v. Kramer</u>, 214 Fed. App'x 244, 247 (3d Cir. 2007)
(citing <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir. 2001) (collecting cases)).  Even if such a
claim were viable independently of an access to courts claim, it is clear from Plaintiff's factual
allegations that he was not precluded from filing institutional grievances, or from pursuing them to
completion.  Additionally, to the extent that Plaintiff bases his claim for relief on diversions from
DOC policy, such allegations do not raise claims of constitutional significance, and thus are not
cognizable under section 1983.  In a suit under § 1983 the plaintiff must show a violation of the
Constitution or laws of the United States, not just a violation of state law.  The two are not the same.
<u>Phillips v. Norris</u>, 320 F.3d 844, 847 (8th Cir. 2003) ("there is no federal constitutional liberty
interest in having state officers follow state law or prison officials follow prison regulations").

hope." *Id.* The second requirement requires a Plaintiff to clearly allege in the Complaint the official acts that frustrated the underlying litigation. Third, a Plaintiff must specifically identify a remedy that may be awarded as recompense in a denial-of-access case that would not be available in any other future litigation. *Id.* at 414.

Here, Plaintiff has failed to identify any legal action he was unable to pursue as a result of Defendants' alleged actions. To the extent that he is alleging that the interference with his mail affected the instant lawsuit, he did not specifically identify any claims that were lost or rejected due to the alleged interference. Accordingly, he has not established actual injury and Defendants are entitled to summary judgment. *Accord* <u>Dunbar v. Barone,</u> Civil No. 12-1337, 2012 WL 2775024, 3 (3d Cir. July 10, 2012).

## E. <u>The Eighth Amendment</u>

In his second cause of action, Plaintiff asserts liability under the Eighth Amendment, which provides as follows.

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1984)).

Notwithstanding, not every injury raises constitutional concerns. A prison official violates the Eighth Amendment only when two requirements are met. The inmate must show

that: 1) he suffered a risk of "serious" harm; and 2) prison officials showed "deliberate indifference" to such risk. Farmer, 511 U.S. at 834. The first element is satisfied when the alleged "punishment" is "objectively sufficiently serious." *Id*. In determining whether a prisoner has alleged a risk that is objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. Helling v. McKinney, 509 U.S. 25, 35 (1993).

The second criterion, deliberate indifference, requires an inmate to show that the prison official had a sufficiently culpable state of mind. The Supreme Court clarified this deliberate indifference standard in Farmer as follows.

> We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement <u>unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference</u>. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer, 511 U.S. at 837-838 (emphasis added).

1.    Failure to Provide Medical Treatment

Plaintiff asserts an Eighth Amendment claim alleging failure to provide adequate medical treatment. To state an Eighth Amendment violation in the context of medical treatment, an

inmate must show prove two elements:  1) plaintiff was suffering from a "serious medical need," and 2) prison officials were deliberately indifferent to the serious medical need.  <u>Gamble v. Estelle</u>, 427 U.S. 107 (1978).  The first showing requires the court <u>objectively</u> to determine whether the medical need was "sufficiently serious."  A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  <u>Gaudreault v. Municipality of Salem</u>, 923 F.2d 203, 208 (1st Cir. 1990); <u>Monmouth County Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987).  The second prong requires a court <u>subjectively</u> to determine whether the officials acted with a sufficiently culpable state of mind.  Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury.  <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993).

a.     <u>Serious Medical Need</u>

A plaintiff alleging constitutionally inadequate medical treatment must submit medical evidence of a "serious medical need" sufficient to satisfy the objective component of the test.  <u>Boring v. Kozakiewicz</u>, 833 F.2d 468 (3d Cir. 1987), *cert. denied*, 485 U.S. 991 (1988).  In <u>Boring</u>, the Court of Appeals for the Third Circuit determined that, because plaintiffs failed to produce expert testimony that their injuries were "serious," they failed to meet their burden of proof.  The court explained that expert testimony would not necessarily be required in situations where the seriousness of injury or illness would be apparent to a lay person, *e.g.*, a gunshot wound.  <u>Boring</u>, 833 F. 2d at 473 (citing <u>City of Revere v. Massachusetts General Hosp.</u>, 463 U.S. 239 (1983)).  With respect to an ulnar nerve injury and migraine headaches, however, the

Court concluded that a fact finder would not be able to determine that the condition was "serious" because the need for treatment did not appear to be "acute." *Id*. With respect to a scalp condition and complaints about dental care, the Court found that the complaints merely reflected a disagreement over the proper method of treatment. In so concluding, the Court noted that "courts will not 'second-guess the propriety or adequacy of a particular course of treatment [which] remains a question of sound professional judgment.'" *Id*. (quoting Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)). Finally, with respect to a prior knee injury, the Court found that the evidence did not establish an acute condition.

> As laymen, the jury would not be in a position to decide whether any of the conditions described by plaintiffs could be classified as "serious." In these circumstances, the district court properly required expert medical opinion and in its absence properly withdrew the issue from the jury.

Boring, 833 F.2d at 474 (citations omitted).

Here, Plaintiff has not included any evidence to whatsoever to substantiate the existence of any serious medical need. Moreover, as Defendants point out, the record evidence belies his contentions in this regard. The records are devoid of any indication that Plaintiff sustained an injury, other than superficial lacerations of his face and shoulder on September 14, 2009. As with the medical complaints in Boring, a lay person would not be able to conclude that Plaintiff's unsubstantiated allegations constituted a "serious medical need" without expert testimony or evidence. Thus, Plaintiff has failed to meet his burden of demonstrating a genuine issue of fact about whether Defendants ignored a critical or escalating medical situation or that their actions posed a substantial risk of serious harm. Because evidence of this nature is required in order for an inmate's claim to succeed, Plaintiff's failure to meet this burden is fatal to his case. *Accord* Sherrer v. Stephens, 50 F.3d 496, 497 (8th Cir. 1995) (inmate failed to submit sufficient evidence that defendants ignored an acute or escalating situation or that delays adversely affected his

prognosis, given the type of injury in this case); <u>Beyerbach v. Sears</u>, 49 F.3d 1324 (8th Cir. 1995) (inmate failed to present any verifying medical evidence to establish the objective component of his claim); <u>Hill v. Dekalb Regional Youth Detention Ctr.</u>, 40 F.3d 1176, 1188 (11th Cir. 1994) (an inmate complaining that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to succeed); <u>Lopez v. Robinson</u>, 914 F.2d 486, 490 (4th Cir. 1990) (to objectively determine whether a "serious deprivation" of a basic human need has occurred (*i.e.*, whether prison conditions to rise to the level of unconstitutional punishment), there must be evidence of a serious medical and emotional deterioration attributable to the challenged condition).[6]

b.  <u>Deliberate Indifference</u>

Moreover, even if the court were to conclude that Plaintiff has demonstrated the existence of a serious medical need, a finding this Court specifically does not make, he has failed to demonstrate that Defendants were deliberately indifferent to it.  The "deliberate indifference" standard for purposes of liability under section 1983 is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action.  <u>Board of County Commissioners of Bryan County v. Brown</u>, 520 U.S. 397, 410 (1997).  The defendant must be both aware of facts from which the inference could be drawn that a substantial harm exists and he must also draw the inference.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).  An official is not deliberately indifferent if "he fails to alleviate a significant risk that he should have identified."  *Id*.  Moreover, deliberate indifference to a serious medical need of a prisoner is

---

[6]  The Court also notes that section 803(d) of the Prison Litigation Reform Act, codified at 42 U.S.C. § 1997e(e), predicates a prisoner's claim for mental or emotional injury suffered while in custody on a showing of accompanying physical injury.  Moreover, section 1997e(e) requires more than a *de minimis* physical injury before an emotional injury may be alleged.  <u>Mitchell v. Horn</u>, 318 FR.3d 523, 533 (3d Cir. 2003).

distinguishable from a negligent diagnosis or treatment of a medical condition; only the former conduct violates the Eighth Amendment. Medical malpractice may give rise to a tort claim in state court but does not necessarily rise to the level of a federal constitutional violation. Kost v. Kozakiewicz, 1 F.3d 176, 185 (3d Cir. 1993); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993).

The Supreme Court explained the difference between negligence and constitutional claims in Estelle v. Gamble, 427 U.S. 97, 104 (1978). In that case, the prisoner, Gamble, was injured when a bale of cotton fell on him while he was unloading a truck. He went to the unit hospital where a medical assistant checked him for a hernia and sent him back to his cell. He returned to the hospital where he was given pain pills by an inmate nurse and then was examined by a doctor. The following day, his injury was diagnosed as a lower back strain; he was prescribed a pain reliever and a muscle relaxant. Over the course of several weeks, Gamble was seen by several doctors who prescribed various pain relievers and provided him with medical work excuses. Ultimately, despite his protests that his back hurt as much as it had the first day, medical staff certified Gamble to be capable of light work. During the next two months, Gamble received a urinalysis, blood test, blood pressure measurement, and pain and blood pressure medication. Subsequently, a medical assistant examined Gamble and ordered him hospitalized for treatment of irregular cardiac rhythm.

The Supreme Court held that Gamble's allegations failed to state a claim upon which relief could be granted against the defendant, both in his capacity as a treating physician and as the medical director of the Corrections Department.

> Gamble was seen by medical personnel on 17 occasions spanning a 3-month period . . .. They treated his back injury, high blood pressure, and heart problems. Gamble has disclaimed any objection to the treatment provided for his high blood pressure and his heart problem; his complaint is "based solely on the

lack of diagnosis and inadequate treatment of his back injury."  The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers.  Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued.  The Court of Appeals agreed, stating:  "Certainly an x-ray of (Gamble's) lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing."  But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act.

Gamble, 427 U.S. at 107 (internal citations omitted) (emphasis added).

There is nothing in the record evidence that suggests that Defendants knew that Plaintiff

Thus, while an intentional refusal to provide any medical treatment to an inmate suffering

from a serious medical need manifests deliberate indifference and is actionable under the Eighth

Amendment, the Eighth Amendment does not require that a prisoner receive every medical

treatment that he requests or that is available elsewhere.  A disagreement as to the appropriate

choice of medical treatment does not give rise to a constitutional violation because the "right to

be free from cruel and unusual punishment does not include the right to the treatment of one's

choice."  Layne v. Vinzant, 657 F.2d 468, 473 (1st Cir.1981).  Mere disagreements over medical

judgment do not state Eighth Amendment claims as there are typically several acceptable ways

to treat an illness.  White v. Napoleon, 897 F.2d 103, 110 (3d Cir.1990) (citations omitted).

Accord Young v. Quinlan, 960 F.2d 351, 358 n. 18 (3d Cir.1992) (an inmate's disagreement with

prison personnel over the exercise of medical judgment does not state claim for relief under

section 1983).

There is nothing in the record evidence that suggests that Defendants knew that Plaintiff

faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable

measures to abate it.  To the contrary, the records reflect that Plaintiff was seen for complaints of

facial pain and left shoulder pain on September 16, 2010 and x-rays were ordered of his facial bones and left shoulder. Results of the x-rays were reported as normal with no evidence of fracture. Plaintiff was prescribed pain medications for his complaints of pain. Plaintiff admitted during his deposition that as soon as he reported the alleged assault, he received medical attention from the nursing staff at SCI Greene. Moreover, Plaintiff was seen by the dentist on October 8, 2010 for his complaints of facial pain. Plaintiff reported to the dentist his pain had been subsiding. The Dentist, Dr. Kostelnik, also ordered pain medications for Anderson. Ms. Howard-Diggs ordered more pain medications for Plaintiff.

The record evidence in this case simply does not show that Defendants acted with deliberate indifference for purposes of imposing liability under the Eighth Amendment's prohibition against cruel and unusual punishment. Thus, Defendants are entitled to summary judgment with respect to this claim.

2. Excessive Force

Plaintiff further claims that Defendants used excessive force. The Cruel and Unusual Punishments Clause of the Eighth Amendment protects inmates against the application of excessive force by correctional officers. *See* Whitley v. Albers, 475 U.S. 312, 318-19 (1986). What is required to prove an Eighth Amendment violation "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992). In an excessive force claim, the core judicial inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Factors relevant to this inquiry include: the need for application of force; the relationship between that need and the amount of force used; the threat reasonably perceived by the responsible officials; and any efforts made to temper the

severity of a forceful response.  <u>Hudson</u>, 503 U.S. at 7 (citations omitted).  The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis.  *Id*.

In reviewing excessive force cases in the prison context, the Supreme Court has instructed as follows.

> When the ever-present potential for violent confrontation and conflagration, ripens into actual unrest and conflict, the admonition that a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators, carries special weight.  Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.  That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice.  Accordingly, in ruling on a motion for a directed verdict in a case such as this, courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives.  Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

<u>Whitley v. Albers</u>, 475 U.S. 312, 321-322 (1986) (internal quotations omitted).

The Eighth Amendment does not protect an inmate against an objectively *de minimis* use of force.  <u>Smith v. Mensinger</u>, 293 F.3d 641, 649 (3d Cir. 2002).  As recognized by the Court of Appeals for the Third Circuit "[t]here exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically." <u>Reyes v. Chinnici</u> 54 Fed. App'x 44, 48-49 (3d. Cir. 2002) (holding force was *de minimis* where corrections officer punched inmate in the shoulder to avoid being spit on).  *Accord* <u>Thomas v. Ferguson</u>, 361 F.Supp .2d 435, 439-41 (D.N.J. 2004)

(finding that, "[e]ven if proven to be true and for no necessary purpose, Defendants' alleged conduct ... does not meet the Constitutional standard for a claim of a malicious and sadistic use of force 'repugnant to the conscience of mankind,' " where inmate alleged he was punched and shoved by corrections officers); <u>Wilson v. Reinhart</u>, 2003 WL 21756393 (D. Del. Jul.29, 2003) (same where officer sprayed inmate in the face with mace).

Here, the record evidence, including the medical evidence, fails to describe a use of force that is "repugnant to the conscience of mankind." Rather, the evidence shows that the use of force was objectively *de minimis* and insufficient to establish an Eighth Amendment violation. In this regard, the undisputed record facts show that Plaintiff pulled away from Officer Shaffer when they were walking to the yard and that Plaintiff bladed his body towards Shaffer and stated, "What are you going to do now?" Officer Shaffer gave Plaintiff an order to turn around, which Plaintiff refused. Officer Shaffer admits to grabbing Plaintiff and placing him on the ground in an aggressive manner to regain control.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1973). The record facts, in addition with the absence of any significant injury, support a conclusion that the force used with respect to the instant action was *de minimis*. Therefore, Defendants' Motion for Summary Judgment should be granted with respect to Plaintiff's excessive force claim. *Accord* <u>Dockery v. Beard</u>, Civil No. 12-3317, 2013 WL 139624, 2-3 (3d Cir. Jan. 11, 2013) (evidence of slight abrasions indicated that officers applied minimal force in a good-faith effort to maintain or restore discipline when prisoner failed to obey order); <u>Smith v. Hulick</u>, No. 97–801, 1998 WL 84019 (E.D. Pa. Feb.25, 1998), *aff'd*, 208 F.3d 206 (3d Cir. 2000) (holding that the District Court properly granted summary judgment for the defendant correction

officer where the defendant punched the plaintiff, who was not in restraints, once in the face and tackled the plaintiff after the plaintiff disobeyed orders holding that the force used was *de minimis*); Hopkins v. Apadaca, Civil No. 1:10-166, 2012 WL 1999487 (W.D. Pa. June 4, 2012); Hickox v. Blair County, Civil No. 3:11-78, 2012 WL 6203009 (W.D. Pa. Dec. 12, 2012); Brandon v. Nazorovich, Civil No. 2:02-343, 2009 WL 891873 (W.D. Pa. March 31, 2009). *See also* Burr v. Hasbrouck Heights Police Dept., 131 Fed. App'x 799, 803 (3d Cir. 2005) (affirming summary judgment in favor of defendant police officers on a Fourth Amendment claim that unreasonable force was used in arresting plaintiff because "small bruises" on her arms did not suggest objectively unreasonable force).

3.    Failure to Intervene

Plaintiff further asserts that Defendants are liable for failing to intervene when he was allegedly attacked by Defendant Shaffer. The Eighth Amendment requires prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners, as well as at the hands of guards or other state actors. Farmer, 511 U.S. at 833. Thus, a corrections officer's failure to intervene in a beating can be the basis for liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and refused to do so. Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002). However, in order for liability to attach under section 1983 for the failure to intervene in another's use of excessive force, a plaintiff must show that: (1) the defendant failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was a realistic and reasonable opportunity to intervene. *Id*. at 651.

Here, Plaintiff has failed to substantiate his claim that excessive force was used against him by Officer Shaffer. As Plaintiff has failed to show that existence of a constitutional

violation, Defendants cannot be held liable for failure to intervene. Accordingly, they are entitled to summary judgment as to that claim as well. *Cf.* Taylor v. Kveton, 684 F. Supp. 179, 183 n. 6 (N.D. Ill. 1988) (noting, in granting an officer summary judgment on his failure to intervene to loosen the plaintiff's too-tight handcuffs, that there was no evidence that the officer was aware the handcuffs were too tight).

### F. Fourteenth Amendment

In his third cause of action, Plaintiff asserts liability under the Fourteenth Amendment (ECF No. 72, ¶ 131, p. 56,). Specifically, he claims that his right to equal protection was violated and lists the same bases for liability as he set forth in his previous claims (ECF No. 72, ¶ 132, pp. 56 -57).

The Fourteenth Amendment provides as follows.

> Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, §1 (emphasis added). Although Plaintiff lists his claim within a paragraph invoking equal protection, due to his *pro se* status, both due process and equal protection will be addressed.

### 1. Due Process

Three kinds of section 1983 claims may be brought against the State under the Due Process Clause of the Fourteenth Amendment. Zinermon v. Burch, 494 U.S. 113, 125 (1990). First, a plaintiff may bring suit under section 1983 for a violation of his specific rights as guaranteed by the Bill of Rights. *Id.* Second, a plaintiff may assert a Fourteenth Amendment claim under the "procedural" aspect of the Due Process Clause, which guarantees fair procedure

for the deprivation of a constitutionally-protected interest in life, liberty or property. *Id*. Third, a plaintiff may assert a claim under the "substantive" prong of the Due Process Clause, which bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them. *Id*. (quoting <u>Daniels v. Williams</u>, 474 U.S. at 331)).

The discussion above reveals that Plaintiff has failed to show any violation of his specific rights as guaranteed in the Bill of Rights. Moreover, he has failed to set forth any violation of his rights as protected by the procedural prong of the Due Process Clause. The protections of the procedural aspect of the Due Process Clause are triggered only if there is a deprivation of a protected interest in life, liberty, or property. If the inmate had no protected liberty or property interest, then the inmate was owed no process, in the form of hearings or otherwise. Neither Plaintiff's allegations nor the record evidence show any liberty or property interest that was impacted by Defendants' action. Thus, he has not alleged a violation of his procedural due process rights.

The constitutional right to "substantive due process" under the Fourteenth Amendment protects individuals against arbitrary governmental action regardless of the fairness of the procedures used to implement them. The Supreme Court has declined to set forth a precise rule outlining the contours of "arbitrary" conduct. Notwithstanding, in <u>County of Sacramento v. Lewis</u>, 523 U.S. 833 (1998), the Court instructed that the substantive component of the Due Process Clause can be violated by governmental employees only when their conduct amounts to an abuse of official power that "shocks the conscience." In so holding, the court reiterated its long standing jurisprudence that only the most egregious official conduct can be said to be "arbitrary" in the constitutional sense. *Id*. at 1718. The court further instructed that courts

should employ a variable range of culpability standards, dependent upon on the circumstances of the case, in determining whether certain actions rise to a constitutionally "shocking" level. *Id*.

In addition, in <u>Lewis</u>, the Court reiterated the following.

> Because we have "always been reluctant to expand the concept of substantive due process," <u>Collins v. Harker Heights</u>, *supra*, at 125, we held in <u>Graham v. Connor</u>, 490 U.S. 386 (1989), that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." <u>Albright v. Oliver</u>, 510 U.S. 266, 273 (1994) (plurality opinion of Rehnquist, C.J.) (quoting <u>Graham v. Connor</u>, *supra*, at 395) (internal quotation marks omitted).

<u>Lewis</u>, 523 U.S. at 842. In <u>Lewis</u>, the Court was confronted with the actions of a policeman who killed a motorcyclist during the course of a high speed chase. Because the claims did not arise under the Fourth Amendment, the Court proceeded to analyze them under substantive due process.

In the case at bar, however, Plaintiff's claims clearly are covered under the First and Eighth Amendments; thus, substantive due process analysis is inappropriate. To the extent that Plaintiff is raising claims that are not covered under these Amendments, there is nothing in the record to show that any of the Defendant's actions rise to a constitutionally shocking level. Thus, Plaintiff has failed to demonstrate that he was exposed to arbitrary government action in violation of his right to substantive due process.[7] *See, e.g.*, <u>Davidson v. Cannon</u>, 474 U.S. 344, 348 (1986) (clarifying that lack of due care does not state a claim under either the substantive or the procedural aspects of the Due Process Clause).

---

[7] Moreover, because Plaintiff has failed to establish the violation of any of his federal rights, he cannot, *a fortiori*, establish a civil conspiracy under Section 1983 because such requires the commission of an underlying federal civil rights violation, which Plaintiff failed to establish. <u>In re Orthopedic Bone Screw Products Liability Litigation</u>, 193 F.3d 781, 789 (3d Cir. 1999) ("[O]ne cannot sue a group of defendants for conspiring to engage in conduct that would not be actionable against an individual defendant."). Thus, Defendants are entitled to summary

2. <u>Equal Protection</u>

The Equal Protection Clause requires that all people similarly situated be treated alike. *See* <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985). To bring a successful claim for a denial of equal protection, a plaintiff must prove the existence of purposeful discrimination. <u>Chambers ex rel. Chambers v. School Dist. of Phila. Bd. of Educ.</u>, 587 F.3d 176, 196 (3d Cir. 2009)). Specifically, a plaintiff stating a claim under the Equal Protection Clause must allege that he has been treated differently because of his membership in a suspect class or that he has been treated differently from similarly-situated others. <u>Young v. New Sewickley Twp.</u>, 160 Fed. App'x. 263, 266 (3d Cir. 2005). In other words, a plaintiff must show that he was intentionally treated differently from others similarly situated and that there was no rational basis for such treatment. <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 243 (3d Cir. 2008).

Plaintiff does not allege any facts showing that he was treated differently from similarly situated inmates or that there was no rational basis for his different treatment. Thus, this claim should be dismissed. *Accord* <u>Carson v. Mulvihill</u>, Civil No. 10-1470, 2012 WL 2878192, 7-8 (3d Cir. July 16, 2012); <u>Hall v. Zickefoose</u>, 448 Fed. App'x 184 (2011); <u>Tennille v. Quintana</u>, 443 Fed. App'x 670, 673 (3d Cir. 2011).

G. <u>State Claims</u>

It is not clear whether Plaintiff is raising state claims in his Second Amended Complaint. A federal court has "supplemental jurisdiction" over claims that are "part of the same case or controversy" as a claim over which the court has original jurisdiction. 28 U.S.C. § 1367(a). Subsection 1367(c) authorizes a federal court to decline jurisdiction over state claims even though the court has federal jurisdiction when:

---

judgment as to Plaintiff's claims of conspiracy.

1.      the claim raises a novel or complex issue of State law;

2.      the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

3.      the district court has dismissed all claims over which it has original jurisdiction; or

4.      in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. §1367(c).

When "the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995). This Report recommends that summary judgment be granted to Defendants on all claims. It follows that any remaining state law claims should be dismissed as considerations of judicial economy, convenience, and fairness to the parties do not provide an affirmative justification for retaining jurisdiction. *Accord* Lovell Manufacturing v. Export-Import Bank of the U.S., 843 F.2d 725, 734 (3d Cir. 1988).

## III.    CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Motions for Summary Judgment filed by Defendants (ECF. Nos. 88 and 91) both be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and the Local Rules, the parties are allowed fourteen (14) days from the date of service to file written objections to this report. Any party opposing the objections shall have 14 days from the date of service of the objections to respond thereto. Failure to timely file objections will constitute a waiver of any appellate rights.

January 23, 2013

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge